UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-601138 - MARRA

UNITED STATES OF AMERICA,

vs.

HOWARD FRANK,

    Defendant.

_____/

**DEFENDANT HOWARD FRANK'S SENTENCING MEMORANDUM AND
REQUEST FOR IMPOSITION OF A BELOW GUIDELINE SENTENCE**

    Defendant, HOWARD FRANK ("Mr. Frank"), by and through the undersigned counsel, hereby presents this Sentencing Memorandum and request for imposition of a sentence below the advisory guideline range. Mr. Frank also sets forth his position to the guideline calculations proposed in the Presentence Investigation Report ("PSI"). In support thereof, Mr. Frank states as follows:

**I.  INTRODUCTION:**

    On April 13, 2021, the Government filed a one-count Indictment charging Howard Frank with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349. Mr. Frank voluntarily self-surrendered to the authorities on April 28, 2021. Immediately thereafter, he posted a personal surety bond plus a cash bond and was released from custody. Mr. Frank was placed under the supervision of the United States Probation Office, and he has remained under pretrial supervision since his arrest. For the past three years, Mr. Frank has fully complied with all Court ordered conditions of his pretrial release. He has been fully compliant and will remain so through resolution of his instant case.

    On May 10, 2024, Mr. Frank pled guilty to the one-count Indictment. Mr. Frank fully understands that he stands before the Court for a serious offense. Indeed, the terms of the written Plea Agreement, as well as the PSI prepared in this case, confirm this is a serious charge.

1

On June 25, 2024, the United States Probation Office disclosed Mr. Frank's PSI. The PSI reflects a Total Offense Level of 27, which, combined with Mr. Frank's Criminal History Category of I, results in an advisory guideline range of 70 to 87 months' imprisonment, PSI at ¶109.

Mr. Frank is a 60-year-old New Jersey native who moved to South Florida in 1991. He is in a long-term, committed relationship and has two adult-aged children. He is a family man who makes it a priority to care for his loved ones. Mr. Frank has no prior criminal history.

Mr. Frank has accepted responsibility for his involvement in the offense, and he is profoundly remorseful.  With that said, we believe a sentence below the advisory guideline range established by the Court, for this 60-year-old, first-time, nonviolent offender, is *reasonable*, and this filing will present sentencing factors under 18 U.S.C. § 3553 in support of that sentence.

## II.  OBJECTIONS TO THE PSR:

The PSI presents a Base Offense Level of 32, which is inclusive of a starting point of Level Six plus 22-levels for a loss of $32,000,000, pursuant to § 2B1.1(b)(1)(L). An additional four-levels are then added because the offense involved defrauding a government health care program of more than $20,000,000, pursuant to § 2B1.1(b)(7)(A)(iii). Mr. Frank then received a two-level reduction because he meets the criteria at §4C1.1(a)(1)-(10) (Zero-Point Offender) and a three-level reduction for Mr. Frank's timely and complete acceptance of responsibility, pursuant to §3E1.1. After all adjustments, the Total Offense Level is 27.

Mr. Frank objects to the loss figure assigned to him in ¶40 and ¶47 of the PSI. He further objects to the remaining guidelines calculations and Sentencing Options as they rely on the incorrect loss amount. Mr. Frank requests the loss figure be reduced to $8,374,657.37.  This figure is based on a review of financial records and seized invoices related to Howard Frank's wholesale businesses (Wholesale Diabetic Supplies Inc./HMF Distributing Inc). $7,276,785.00 is attributed to the international Abbott FreeStyle Lite diabetic test strips, and $1,097,872.37 is attributed to labels ordered from a print shop (by

multiplying the total number of National Drug Code (NDC) and Bar Code labels ordered from the local print shop by the retail values of the Accu-Chek diabetic test strip products). The grand total is $8,374,657.37.

Should the Court adopt this revision, the increase for loss is reduced by four levels, pursuant to § 2B1.1(b)(1)(J), and the increase for losses related to a government health care program is reduced by one level, pursuant to § 2B1.1(b)(7). After the reductions for Zero-Point Offender and Acceptance of Responsibility, the Total Offense Level will be a 22. The advisory guideline imprisonment range for a Level 22, Criminal History Category I, is 41 to 51 months. To clarify, Mr. Frank in no way objects to the fact that he is responsible for a loss, he simply requests the loss amount reflects the amounts described above. Should this objection be resolved, Mr. Frank does not have additional objections to the guidelines' calculations presented in the PSI.

### III.   SENTENCING MEMORANDUM:

The following is submitted pursuant to the sentencing factors of 18 U.S.C. § 3553 in support of a sentence below the advisory guidelines range as that range is determined by the Court. A lesser sentence will adequately serve the retributive, punitive, protective, and deterrent goals of sentencing.

**Application and Consideration of the 18 U.S.C. § 3553(a) Factors**

The Sentencing Guidelines are "merely advisory, and the Court is not bound to apply the sentence indicated by the Guidelines so long as they are first determined and then carefully considered." *United States v. Gibson*, 442 F. Supp. 2d 1279, 1282 (S.D. Fla. 2006) (citing *United States v. Booker*, 543 U.S. 220, 260–61 (2005)). Based on the forthcoming analysis of Mr. Frank's mitigating 18 U.S.C. § 3553(a) factors, we respectfully ask the Court to impose a sentence which is a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [3553(a)(2)]."

**The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant. (18 U.S.C. § 3553(a)(1)):**

**Nature and Circumstances of the Offense:** As detailed in the Offense Conduct section of the PSI at ¶4 through ¶38, the offense began in 2013, over ten years ago, and ended in 2016. During this time, Mr. Frank and certain co-defendants, were pharmacy owners engaged in a conspiracy to sell non-retail diabetic test strips as if they were retail appropriate diabetic test strips and bill the health benefit plans for the more expensive retail test strips, to maximize profit. As detailed in ¶40 of the PSI, Mr. Frank did not hold an aggravating role in the scheme. He was not an organizer, leader or manager. He shipped packages of non-retail and international diabetic test strips, labeled as retail, to customers. Again, it is important to note that the offense conduct ended over eight years ago. It has been over ten years since Mr. Frank was identified by law enforcement as a target in the investigation.

**Resolution of Criminal Liability and Acceptance of Responsibility:** Mr. Frank did not put the government to its burden and has sought a resolution of the criminal matter from an early onset. Mr. Frank long ago accepted full responsibility for his involvement in this offense, as detailed in his Factual Proffer, and he has received the standard guideline reduction for Acceptance of Responsibility, pursuant to § 3E1.1. However, Mr. Frank's acceptance of responsibility goes far beyond the standard degree most offenders achieve. As detailed in ¶44 of the PSI, the victim, Abbott Laboratories, has been made whole by the defendants in this case. In 2015, Mr. Frank and certain coconspirators were sued by Abbott Laboratories for having illegally distributed non-retail diabetic test strips. Subsequently, Mr. Frank settled his civil liability with Abbott Laboratories by satisfying all monies sought. In fact, the civil matters in this case were filed and resolved prior to the Indictment in the instant case was filed in April 2021. While the details of the resolution are sealed, the Court should place significant weight on Mr. Frank's efforts in the mitigation analysis. It goes without saying that the Court is aware how rare it is for restitution in a criminal case to be paid, in part, or in full. The reality is that most victims are rarely made whole. Most

4

victims receive a small sum of money monthly over a multi-year period. Mr. Frank's acceptance of responsibility and the jointly undertaken efforts to satisfy the crime related restitution in this case has been extraordinary.

**Personal and Family History:** Mr. Frank was raised in Brooklyn, New York in a loving home. His father was a hardworking entrepreneur who owned various businesses over the years including a toy store, an ice cream shop and a bicycle shop. Sadly, the Senior Mr. Frank died from salivary gland cancer in 1998. Howard Frank was devastated by the death of his father. Mr. Frank's mother was a career schoolteacher in New York City, until her retirement. Mr. Frank has two sisters. Mr. Frank fondly remembers being raised in a happy, loving, abuse-free home. As they aged, Mr. Frank was dedicated to the care and wellbeing of his parents.

Unlike his parents, Mr. Frank was not so lucky in love. He married four times between 1989 and 2012. Each of these relationships ended in divorce. Mr. Frank had children only with his first wife, Linda Kazinec. Despite their divorce, Mr. Frank and Linda Kazinec maintain a close and amicable relationship. Their two children are Matthew and Sara Frank. Matthew Frank was born in 1991 and he currently resides in Denver, Colorado, where he works in the marketing field. Father and son have a very close and supportive relationship. Sara Frank was born in 1993 and she currently resides with her mother. Sara has a 15-month-old daughter. Tragically, in 2022, the child's father committed suicide. Additionally, Sara Frank has long struggled with mental health issues, and she currently attends a day program for individuals with mental health conditions. Essentially, the program is an intensive, out-patient day program. Mr. Frank shares a close relationship with his daughter and grandchild.

For the past six years, Mr. Frank has been in a relationship with Gayana Mkhitaryan. Ms. Mkhitaryan has a ten-year-old daughter, and they reside together in Southern California. Mr. Frank stays with Ms. Mkhitaryan when he is in California. The couple plan to marry. Ms. Mkhitaryan is fully aware

of Mr. Frank's legal issues, and she remains supportive.

### Mr. Frank's Family Circumstances include Responsibilities to his 86-year-old Mother who Suffers from Dementia and Blindness:

Mr. Frank understands his conduct placed him before the Court and he appreciates that, in issuing a sentence, a court's primary focus must be on the offense and the offender, not on the defendant's family. Here, however, it is important that the Court understands that Mr. Frank's mother is under hospice care in her home and requires 24-hour a day care. Mr. Frank and his sister, Sheryl, coordinate all care for Mrs. Frank. Sheryl Frank resides in Maryland and relies on Howard Frank to frequently check on their mother and manage her day-to-day needs. Mr. Frank is dedicated to his mother and hopes to be fully engaged in her care until she passes away.

In addition, Mr. Frank and his daughter, Sara, share an especially close relationship. Sara struggles with mental health instability and is a mother of a 15-month-old toddler. Mr. Frank is in daily contact with his daughter and works with her mother to ensure she and her toddler are well cared for and supervised.

The Court clearly has the power to take these concerns into account at sentencing. *See, e.g.*, *United States v. Schroeder*, 536 F.3d 746, 755 (7th Cir. 2008) ("A defendant's extraordinary family circumstances can constitute a legitimate basis for imposing a below-guidelines sentence"); *United States v. Dominguez*, 296 F.3d 192, 199–200 (3d Cir. 2002) (district court erred in concluding it could not depart four levels in bank fraud case for defendant who resided with elderly parents, who were physically and financially dependent on her). Mr. Frank asks that the Court recognize his essential role in the care of his mother and his daughter.

### Mr. Frank's Age and Physical Health Merit a Below Guideline Sentence:

Mr. Frank is 60 years old and struggling with chronic medical conditions. Section 5H1.1 of the Guidelines provides that age "may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical case covered by the guidelines." While Mr. Frank realizes that every defendant has his or her own health issues, he, at 60-years-old with

6

complex medical problems, facing a lengthy term of imprisonment, is hardly the ordinary defendant in age or health and fits squarely into the language and purpose of § 5H1.1.

The "Silver Tsunami" by Evan A. Jenness and published in the September/October 2013 Champion, discusses the issue of elderly and infirmed inmates. What is "old" when it comes to sentencing a defendant to prison is not the equivalent of "old" in the outside world. The median age of a federal defendant at sentencing is 36.[1] The National Institute of Corrections defines prisoners 50 and older as "elderly" and "aging",[2] and 15 states specifically define an "older" inmate as 50 or older.[3] Only 3.8% of all federal inmates are over the age of 60.[4] No matter the age benchmark chosen, Mr. Frank surpasses it. Mr. Frank is not the typical defendant as a 60-year-old entering the federal correctional system for the first time.

Mr. Frank's health issues compound this problem. As documented in the PSI, Mr. Frank, almost ten years ago, was diagnosed with obstructive sleep apnea and he requires the use of a CPAP machine when he sleeps. He also has high cholesterol for which he takes 20 milligrams of rosuvastatin calcium once daily.

Since 2018, Mr. Frank has been a type II diabetic with diabetes associated neuropathy. He wears an affixed glucose monitor, which has a filter that must be changed every two months. For this condition, Mr. Howard takes numerous medications: two milligrams of glimepiride twice daily; 100 milligrams of Januvia and 1.2 milligrams of Victoza injected once daily. He also takes 500 milligrams of naproxen once every 12 hours for his diabetes related neuropathy. Due to the diabetes, Mr. Frank develops open wounds on his feet. These wounds are very difficult to heal and require constant bandages and wound care. Of

---

[1] USSC Sourcebook FYE 2023, Table 7
[2] Dr. Joann B. Morton, An Administrative Review of the Older Inmate, USDOJ, National Institute of Corrections, 4 (1992)
[3] Human Rights Watch, Old Behind Bars: The Aging Prison Population in the United States (2012), at 17
[4] USSC Sourcebook FYE 2023, Table 7

7

late, Mr. Frank has been required to wear a boot to promote healing of one of his deep open wounds. His feet suffer such circulatory issues that his toenails turn black and require routine podiatric care.

For the past year, Mr. Frank has been afflicted with chronic breathing problems. It was determined that his diaphragm is displaced and resting on his right lung. To assist with his breathing, Mr. Frank utilizes an albuterol inhaler every four hours, and an umeclidinium bromide/vilanterol inhaler once per day. This is a chronic condition with no interventional treatment available aside from physical manipulation of his diaphragm. Mr. Frank visits a chiropractor one to three times per week for physical manipulation sessions in hopes of shifting his diaphragm back into its proper position.

If incarcerated, Mr. Frank will not have access to comprehensive and consistent medical intervention to slow the pace of his physical decline. A lengthy term of imprisonment served by a 60-year-old will most likely result in more extreme collateral consequences than the same term of imprisonment served by a young man.

Mr. Frank's age and health, however, are more than just a compelling reason for mercy and compassion, but also is directly relevant to the analysis of 18 U.S.C. § 3553(a)(2), strongly weighing in favor of the Court imposing a below guidelines sentence. *See United States v. McFarlin*, 535 F.3d 808, 811 (8th Cir. 2008) (upholding a sentence of three years' probation despite a guidelines range of 60 months based largely on defendants age, medical condition, and post-arrest rehabilitation, stating, "[t]he Guidelines also provide that, when considering a defendant's age, a court may consider alternative forms of incarceration for an elderly, infirm defendant that would be 'equally efficient' as incarceration") (citation omitted). Mr. Frank's personal risk of recidivism is low, as shown by his zero criminal history points and exemplary post-offense behavior but is also inherent to his age and health. *See* U.S. Sent'g Comm'n (USSC), Older Offenders in the Federal System 43 (2022) (finding the recidivism rate for offenders over the age of 50 to be less than half of that of offenders under the age of 50); *United States v. Clay*, 483 F.3d 739, 745 (11th Cir. 2007) ("Both the Guidelines calculations and the sentencing factors of section 3553(a) require a judge to consider characteristics of the defendant

8

and the offense that make it more or less likely that the defendant will reoffend."); *United States v. Green*, 2007 WL 869725, at *2 (S.D. Ohio Mar. 20, 2007) ("[D]istrict courts have routinely considered a defendant's age as part of their analysis on the grounds that older defendants exhibit markedly lower rates of recidivism compared to younger defendants[.]").

Mr. Frank's advancing age and increasing health concerns also carry with it complications to how his time in custody will be served. Certainly, due to his age and health, incarceration will be far more challenging to him and compared to most of the inmate population. An elderly inmate can be more vulnerable to abuse and may need accommodations that are difficult to obtain in a relatively inflexible physical environment. As previously mentioned, correctional healthcare addressing the needs of the elderly inmate is minimal and often insufficient.

Mr. Frank asks the Court to consider his age and health, and the relationship between age and the purposes of punishment outlined in 18 U.S.C. § 3553(a)(2), and not impose a sentence greater than necessary.

### Mr. Frank is a Zero-Point Offender and Should Receive a Two-Point Reduction Under §4C1.1 and a Downward Departure as a Nonviolent First Offender under §5C1.1:

As reflected in the PSI at ¶52, Mr. Frank meets all the eligibility criteria and fits squarely within the rationale of the zero-point offender provision. He, therefore, appropriately is eligible to receive any one or more of the following: a two-point reduction under §4C1.1; a downward departure under §5C1.1 for nonviolent first offenders who receive a reduction under §4C1.1; and/or a downward departure or variance in this Court's discretion because Mr. Frank's lack of criminal history and reduced chance of recidivism independently justify such a reduction.

#### a. Mr. Frank Qualifies for the Two-point Reduction Under §4C1.1:

In April 2023, the Sentencing Commission proposed Amendment 821 which provided for a two-level reduction for certain zero-point offenders. In proposing this amendment, the Commission noted that

9

"offenders with zero criminal history points have considerably lower recidivism rates than other offenders, including offenders with one criminal history point" and that " 'zero-offenders' were less likely to be rearrested than 'one point' offenders (26.8% compared point to 42.3%), the largest variation of any comparison of offenders within the same Criminal History Category." *See* United States Sentencing Commission, Amendments to the Sentencing Guidelines, 79, Nov. 30, 2023.

Mr. Frank is a zero-point offender, PSI at ¶52. In his 60 years, Mr. Frank has not accumulated a single criminal history point. Further, as shown by his actions in the years since the offense, most importantly, his complete compliance with all conditions of his pretrial release, Mr. Frank poses no risk of recidivism. He not only fits the eligibility criteria, of §4C1.1, but also its rationale.

**b. The Court Should Depart Downward Under §5C1.1 Because Mr. Frank is a Nonviolent First Time Offender:**

In Amendment 821, the Sentencing Commission also added Application Note 10 to §5C1.1 of the Guidelines. U.S.S.G. § 5C1.1 cmt. n.10. Consistent with the Commission's recognition that zero-point offenders are less likely to recidivate, Application Note 10 recognizes that reducing the portion of a sentence comprised of incarceration for nonviolent first offenders who receive a reduction under §4C1.1 is generally appropriate. Specifically, as relevant here, Application Note 10(B) expressly permits departures, including to a sentence other than imprisonment, for offenders receiving an adjustment under §4C1.1 and if the guidelines overstate the offense.

Mr. Frank is a nonviolent first-time offender and, as discussed above, will receive an adjustment under §4C1.1. The applicable guideline range overstates the gravity of the offense not only because it is not a crime of violence, but also because it overstates the harm. Such a departure, including to impose a sentence other than a sentence of imprisonment, is also merited when considering all the factors under 18 U.S.C. § 3553(a).

**c. The Court Should Depart or Vary Downward in its own Discretion Due to Mr. Frank's Lack of Criminal History and Reduced Chance of Recidivism:**

As discussed above, Mr. Frank has received a two-level reduction under §4C1.1 and merits an additional downward departure under §5C1.1., due to Mr. Frank being a nonviolent first offender. The commentary to Amendment 821 makes clear that the primary justification for the new provisions is the recognition that zero-point offenders pose significantly reduced risks of recidivism. Mr. Frank's conduct before the present offense, as evidenced by his zero criminal history points, and in the years following the offense, as evidenced by his compliance with all conditions of his pretrial release and continued efforts to care for his family, provides concrete evidence that he does not pose a risk of recidivism. Accordingly, the Court can exercise its independent discretion to reduce his sentence further because the justification for these provisions applies in full force.

**Proportionality Among the Sentences of Co-Conspirators and Avoidance of Gross Disparity in Sentencing:**

18 U.S.C. § 3553(a)(6) requires courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" in fashioning sentences. This memorandum has not yet discussed the topic of comparative punishment related to the individuals charged in the instant offense. The sentences of two co-defendants are illustrative of the large disparity that would be created by a within guideline sentence for Mr. Frank. Both Jason Grama and Perfecto Hallon have received probationary sentences. These non-incarcerative sentences were jointly recommended to the Court and were achieved because of downward variances and/or departures. Should Mr. Frank be held accountable for such a vastly different loss amount and be sentenced within the guideline range, the outcomes will be vastly disparate. These cases illustrate that, to avoid a sentencing disparity, a sentence substantially lower than the calculated Guidelines range is appropriate for Mr. Frank.

## IV. CONCLUSION

Mr. Frank has accepted responsibility for his involvement in this offense. He is deeply ashamed and remorseful. A sentence below the advisory guideline range will reflect the seriousness of the offense, promote respect for the law, provide just punishment and deterrence. Mr. Frank and counsel thank this Court for considering our Sentencing Memorandum.

Respectfully Submitted,

/s/Michael A. Gottlieb
Michael A. Gottlieb, Esquire
Michael A. Gottlieb, P.A.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by e-mail on this 16th day of July, 2024 to all interested parties via the CM/ECF electronic filing system.

/s/Michael A. Gottlieb
Michael A. Gottlieb, Esquire
Michael A. Gottlieb, P.A.
1311 SE 2nd Avenue
Ft. Lauderdale, Florida 33316
mike@mgottlieblaw.com
Phone: (954) 462-1005
Florida Bar No.: 981133